# N. Y. COMMON PLEAS.

### Action No. 1.

THE ELEVENTH WARD SAVINGS BANK agt. ALLEN HAY and others.

### Action No. 2.

SAME agt. SAME.

### Action No. 3.

SAME agt. SAME.

*Mortgage foreclosure — three mortgages on same premises, bearing even date and recorded at same time — Actions commenced and judgment entered at same time — Equality of liens — power of court to order moneys distributed pro rata.*

It is the duty of the court to distribute moneys received at judicial sales. After moneys have been paid into the hands of court's officers, the court must see that they reach those entitled to them. The *court,* and not a referee appointed to execute the judgments of foreclosure, must determine the priority of liens.

If liens be equal in rank, the power of the court to protect that equality is not impaired by any error which a referee may have fallen into in making a sale.

If fraud, misconduct, surprise, or well grounded misapprehension has prevented the sale of the property for the price that ought to have been obtained, or if for any other reason it should be inequitable to permit the sale to stand, a resale will be ordered.

But where no one applies for a resale, and where all parties are content that the sale shall stand, and where justice can be done without a resale, the court will not order one of its own motion.

Where *three* actions were *each* commenced to foreclose a *separate mortgage of equal date, lien and time of record and amount of purchase-money* upon the *same parcel* of land, said three mortgages having been originally made to secure the separate amounts due to each of the joint grantors of said lands. The actions were numbered 1, 2 and 3. *Three*

*separate judgments* have been entered, all of which bear date November 20, 1876, and filed on November 22, 1876. The referee appointed in and by said judgments to sell the mortgaged premises, on the day advertised for said sale, offered the same for sale under the judgment in action No. 1, and the premises were sold for $34,500. Afterward the same premises were offered for sale under judgment No. 2, and were struck off to the same purchaser for $250, and immediately thereafter the same premises were again offered for sale by the referee under judgment No. 3, and were struck off to the same purchaser for $250. On petition of one of the sureties for the payment of said mortgaged debt, asking that an order be made in said actions directing the referee to apply the amount of the proceeds of the sales under said judgments proportionably to each:

*Held, first,* that, no one of the mortgages had any priority over the others, and the referee should not be permitted to give precedence to one of the judgments, simply because he finds it marked No. 1. The court itself had no power to give that judgment or that mortgage priority.

*Second,* It is the duty of the court to protect the equality of liens where it exists, and, in performing that duty, the court will look behind the proceedings of the referee to the transaction out of which the liens arose.

*Third,* These three mortgages being equal liens, equity requires that the money received at the sale should be divided among them proportionably

*Fourth.* The sureties are entitled to make the petition. The plaintiff could demand such a division, and the sureties, by right of subrogation, may demand it likewise. They are bound by the judgments in these actions, and on paying the mortgage debt to the plaintiff they will become entitled to all the securities for that debt which the plaintiff possesses.

*Fifth,* Although the petitioner has not paid the debt, he is liable to pay it, and "the same equity which enables a surety, after payment by himself, to recover the amount from his principal, warrants him to file a bill to compel payment by the principal, when he has been brought under liability, by the debt falling due, though he may not have been actually sued." Under this principle, the petitioner is not prematurely applying for relief.

*Special Term, June,* 1878.

I. In these three cases the mortgages, bonds and decrees, and all subsequent proceedings, stand upon an exact equality as respects all the parties and the subject-matter of the suit.

II. The petitioner, besides being a purchaser, is adjudged

liable to pay any deficiency arising on the sale, by reason of his having guaranteed the payment of the bonds and mortgages.

III. The purchaser was compelled to buy in under the second and third sale to save complications with other possible purchasers.

IV. The referee instead of selling under all three judgments at the same time, sold under them separately in the order of their number and sold three times. The sale under No. 1 brought $34,500, under the others $250 each, leaving in No. 1 a surplus of some $8,000 besides taxes.

V. Without instructions from the court the referee will apply all the purchase-money to the extinguishment of the first judgment in number notwithstanding all were alike in equity.

VI. On appeals in the three cases there were bonds given (to pay deficiency arising on sale of mortgaged premises) in this court to the extent of $750 and Ernest Ohl and H. Eisner were sureties. They have notice of this application.

VII. Pending appeals, interest accrued on the judgment to a large amount and the property depreciated largely.

VIII. The petitioner and his co-guarantees were not parties to this appeal. It was taken against their interest.

IX. The petitioner in his own behalf, as one of the guarantees liable for deficiency by the judgment, claims to have the purchase-money applied *pro rata* in these judgments so that the sureties on the appeal may be called on to respond to the extent of their liability for this deficiency which has been almost, if not quite, entirely created by the appeals.

The defendant David M. Koehler owned the mortgaged premises; Allen Hay was the original mortgagor; the defendants, Heller (the petitioner) and the two Zinns, had guaranteed payment of the mortgaged debt; Koehler alone defended and after judgment alone appealed to the general term and again to the court of appeals; Eisner and Ohl were his sureties on the appeals, and the value of the mortgaged premises had so

depreciated by the delay occasioned by these appeals, that there was a prospect of a large deficiency. By applying the whole of the purchase-money to the first judgment, or the judgment in action No. 1, until it was paid the liability of the sureties on the appeals for deficiency on it, would have been extinguished, which the petitioner deemed a prejudice to him (*See S. C. ante* 438).

*Lewis Johnston,* for defendant Heller the petitioner. *Albert Mathews,* of counsel.

I. Equality is equity, and the judgments being equal liens, the guarantors have the right to have the purchase-money arising on sale applied equitably whatever may be the ulterior results (*Campbell* agt. *Ruger,* 1 *Cow. Rep.*, 215).

II. The guarantors have a superior equity that this money be applied on all the judgments alike so that the obligors on the appeal, may be compelled to pay so far as liable on account of the deficiency that has arisen out of an appeal taken without their privity and against the interest of the guarantors.

III. The necessity of this application arises out of an ill advised proceeding on the part of the referee in selling under the three judgments separately instead of jointly (*Snyder* agt. *Stafford,* 11 *Paige R.*, 76).

IV. It was against equity and contrary to the practice of courts of equity to permit three suits to be prosecuted on these three mortgages by the same party against the same parties and the court is bound at any stage of the case, upon the suggestion of any party, to suppress the mischief and prevent any further injustice therefrom (*Roosevelt* agt. *E'listhorp,* 10 *Paige R.*, 419; *Newman* agt. *Ogden,* 6 *Ch. Decisions,* 40; see *Potter* agt. *Crandell,* 1 *Clarke Ch. R.*, 119).

V. On a decree of foreclosure and sale, this court will always regulate the subsequent proceedings to prevent injustice (*Van Nest* agt. *Yeomans,* 1 *Wend. Rep.*, 88; *Suffern* agt. *Johnson,* 1 *Paige R.*, 450; *N. Y. Life Ins. Co.* agt.

*Cutter*, 3 *Sand. Chy. R.*, 176; *Gregory* agt. *Campbell*, 16 *How. Pr.*, 417; *Livingston* agt. *Milldrum*, 19 *N. Y. R.*, 440; *Mu. Life Ins. Co.* agt. *Salem*, 3 *Hun's R.*, 118; *Mu. Life Ins. Co.* agt. *Bowen*, 47 *Barb. R.*, 682).

VI. The direction of the court is indispensable in this case to prevent the referee applying the whole of the purchase-money in the first judgment and thereby allowing (1st), the act of injustice of giving this large amount of surplus to the subsequent incumbrancers and (2d), the still greater mischief of leaving the guarantors against deficiency to pay a a much larger demand in the cases Nos. 2 and 3, than is just or equitable.

VII. The petitioner and his co-guarantors have a right to ask this court, in its equitable disposal of this matter, to direct this money (purchase-money) to be applied *pro rata* upon each mortgage judgment. Any other disposition of the fund will work injustice.

*Joseph Bellesheim*, for the plaintiffs in the three actions and the sureties on the appeals in the actions. *Albert Cardozo*, of counsel.

*Kauffman, Tunstall & Wagner*, for defendant Koehler. *Sigismund Kauffman*, of counsel.

VAN HOESEN, *J.* — Hay, bought a piece of land, and to secure the payment of a part of the purchase-money, gave three mortgages of the same date and amount, which were all payable at the same time, and all filed for record at the same instant. Three mortgages were made, because there were three venders of the land, every one of whom chose to have a security, which he could sell at his own pleasure without consulting other persons, and the interest upon which he could collect for himself without being at the trouble of a division with the other two mortgagees. The three mortgages were liens of equal rank in all respects. They were all

transferred to the Eleventh Ward Savings Bank, the plaintiff in these three actions. Hay sold the land to David M. Koehler, who assumed and agreed to pay the mortgages; afterwards, Abraham Heller, Abraham Zinn and Solomon Zinn, by an instrument under seal, guaranteed the payment of the principal of the mortgages at maturity, and of the interest as it should from time to time accrue. For non-payment of the principal at maturity, the plaintiff undertook the foreclosure of the three mortgages. It is not at this time worth while to express an opinion as to the propriety of the plaintiff's course in bringing three different actions of foreclosure when all three mortgages should, according to the settled practice of the court, have been foreclosed in one action. The plaintiff brought three actions and obtained judgment in all. From the three judgments, David M. Koehler appealed, first to the general term of this court, and afterwards to the court of appeals. Koehler did not give the usual undertaking to stay proceedings pending the appeal, but gave instead, with the plaintiff's concurrence, three bonds of indemnity, one in each suit, providing for the payment of any deficiency arising upon the sale of the mortgaged premises under the judgments of foreclosure. Ernest Ohl and Henry Eisner were the sureties on all three indemnity bonds. The judgments of foreclosure were all affirmed by the general term of the common pleas and by the court of appeals. The referee appointed to execute the judgments, then proceeded to sell the property. He did not sell under the three judgments at one and the same sale, but assuming that the judgment which the plaintiff had, for convenience, called No 1, ought to be executed first, he sold the entire property under that judgment for $34,500. He afterwards made another sale of the same property under the judgment called No 2, and thereafter made a third sale under the judgment called No. 3. The same person who had bought the property at the first sale, bought at the second and third sales, bidding $250, each time. The entire sum bid at the three sales is $35,000. The taxes, assessments and water rates

due upon the property amount to about $15,000, and must, as well as the cost of the three actions be paid out of the $35,000 before the residue can be paid to the plaintiff    It is estimated that there will be a deficiency of $18,000, for which judgment will be entered against Hay, Koehler the Zinn Brothers and Heller.    Heller alone comes in and asks that the referee be instructed to divide such of the proceeds of the sales under the three judgments as may be coming to the plaintiff, among the three judgments proportionally.    To that objection is made by Ohl and Eisner, the sureties on the indemnity bonds, and by Mr. Koehler.    The counsel for Mr. Koehler contends that the court cannot take the money bid at one sale and distribute it as if it had been paid on different sales, and that the only power the court has is to order a resale in case it be adjudged that the referee did injustice by making a separate sale under each judgment instead of selling under all three judgments at one time.    Counsel for Ohl and Eisner contends that the court cannot divide the money among the three judgments without great injustice to the sureties on the indemnity bonds.    These sureties it is agreed are bound to pay any deficiency arising under the judgments.    There will not be any deficiency at all under judgment No. 1, and there will be a comparatively small deficiency under judgment No. 2.    If the $34,500 bid at the first sale be applied to the payment of the judgments in the order in which the referee proceeded to execute them, for the small deficiency under judgment No. 2, and for the large deficiency under judgment No. 3, Ohl and Eisner are content to be held responsible.    If, however, the money bid at the first sale be divided proportionally among the three judgments, there will be a deficiency in each case, and Eisner and Ohl will be compelled to pay all three indemnity bonds. Fortunately for them the amount of each bond is only about $750.    Counsel further contended that the court would alter and increase, or rather would be attempting to alter and increase, the liability of the sureties, Ohl and Eisner, if it

should order the division of the money among the three judgments. I have no doubt of the power of the court to distribute these moneys among the judgments. It is the duty of the court to distribute moneys received at judicial sales, after moneys have been paid into the hands of court's officers. The court must see that they reach those entitled to them. The court must determine the priority of liens. If liens be equal in rank, the power of the court to protect that equality is not impaired by any error which a referee may have fallen into in making a sale. The mistake of the referee may or may not require that property should be resold. If fraud, misconduct, surprise or well ground misapprehension has prevented the sale of the property for the price that ought to have been obtained, or if for any other reason it would be inequitable to permit the sale to stand, a resale will be ordered. But, here no one applies for a resale; all parties are content that the sale shall stand, and if justice can be done without a resale, there would be no sense in the court ordering one of its own motion. I find that no one of the mortgages had any priority over the others; why, then, should the referee be permitted to give precedence to one of the judgments because he finds it marked No. 1? The court had no power to give that judgment or that mortgage priority; shall the error of a referee effect what the court is powerless to accomplish? As I have said it is the duty of the court to protect the equality of liens where it exists, and in performing that duty the court will look behind the proceedings of the referee to the transaction out of which the liens arose. These three mortgages being equal liens, equity requires that the money received at the sale should be divided among them proportionably. The plaintiff does not, however, apply for such a division. It is of no importance to the plaintiff whether this application be granted or not, all the money to be paid will, in any event, go to the plaintiff, and the amount will neither be increased or diminished by ascribing it ratably to the three mortgages. To the petitioner it is a matter of no little

importance. He is one of the sureties for Koehler, and is bound by the judgments in these actions. On paying Koehler's debt to the plaintiff, the sureties will become entitled to all the securities for that debt which the plaintiff possesses. The indemnity bonds are a part of those securities. If the plaintiff would enforce the payment of those bonds the guarantors of Koehler's mortgage debts will become entitled to enforce them if they pay that debt. The petitioner, like Mr. Hay and the Messieurs Zinn, needs for his protection that the moneys be so divided among the mortgages that he will not be deprived of such security as the indemnity bonds afford. The plaintiff could demand such a division, and the sureties, by right of subrogation, may demand it likewise.

In *Story's Equity Jurisprudence* (10*th edition, sec.* 499*a*) it is said: "Where the principal in a bond had been sued and gave bail and judgment was obtained against the principal and also against the bail by the creditor, and afterwards the sureties on the original bonds (who had counterbonds) were compelled to pay it and then brought their bill in equity to have the benefit of the judgment of the creditor against the bail by having it assigned to them; it was decreed, accordingly; so that although the bail were themselves but sureties as between themselves and the principal debtor, yet, coming in the room of the principal debtor as to the creditor, it was held that they likewise came in the room of the principal debtor as to the sureties on the original bond. The original sureties had no direct contract or engagement by which the bail were bound to them, but only a claim against the bail, through the medium of the creditor, to all whose rights and the power of enforcing them, they were held to be entitled."

The case of *Bronson* agt. *Thomas* (2 *Jones' Eq.*, 414) is a strong authority to the same effect (*See, also, Barnes* agt. *Mott*, 6 *Daly*, 150).

It is true that the petitioner has not paid the debt, but he is liable to pay it; and in *Adam's Equity* (*p.* 270) it is said: "The same equity which enables a surety, after payment by

himself, to recover the amount from his principal, warrants him to file a bill to compel payment by the principal, when he has been brought under liability by the debt falling due, though he may not have been actually sued."

Under that principle it seems to me that the petitioner is not prematurely applying for relief. The disposition of the money that Eisner and Uhl desire would embarrass if not entirely thwart him in obtaining the full benefit of subrogation.

I am not unmindful of the fact that Heller alone presents this petition, though Hay and the two Simms have an interest in the matter at least equal to his; but they have all received notice of this application and the granting of it will inure to their advantage. Heller ought not to lose his rights because others do not care to assert theirs.

I see nothing in the objection that the contract of the sureties on the indemnity bond would be altered, and that gross injustice would be done to them by dividing the moneys proportionally. The contract of those sureties was made with reference to the existing law and practice of the court. If those rules require, as I think they do, the proportional distribution of the moneys, the burden of the sureties is not increased by carrying out the rules. The sureties agreed to pay the deficiency, what that deficiency is the court must determine upon equitable principles and in conformity with its practice.

The application is granted.